IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MACK K. BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-cv-0234-MJR |
| | ) |
| DANIEL HELMER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Before the Court is Defendant Helmer's motion to dismiss (Doc. 16). Plaintiff Boyd, an inmate at Pinckneyville Correctional Center, filed this action pursuant to **42 U.S.C. § 1983**. He challenges the conditions of his confinement at Menard Correctional Center, claiming that Helmer, a correctional officer, inflicted cruel and unusual punishment on November 12, 2002. Specifically, Boyd alleges that Helmer kicked the chuck hole door on Boyd's cell, deliberately causing serious injury to Boyd's left arm.

Helmer seeks dismissal, arguing that Boyd filed suit without first exhausting his administrative remedies. Boyd claims that he did exhaust all available remedies (Doc. 21).

While Boyd was confined at Menard Correctional Center, he sent correspondence to the Illinois Department of Corrections, seeking information regarding emergency grievances. On November 4, 2002, an assistant deputy director responded, explaining that emergency grievances are forwarded to the warden's office and that a matter considered to be an emergency is answered immediately. The assistant deputy director also explained that a grievance that does *not* need emergency review would be returned to the inmate to be processed in the normal procedure.

The normal procedure for grievances starts with a request for assistance from a counselor and ends with an appeal of the warden's decision to the Administrative Review Board ("ARB"). **20 Ill. Admin. Code § 540.800,** *et seq*.

Boyd attempted to exhaust administrative remedies with regard to Helmer's conduct. On November 12, 2002, he prepared a grievance accusing Helmer of assault. He sent his grievance to Jonathon Walls, the warden at that time, seeking emergency review, but received no response. On November 17, 2002, Boyd sent Walls another emergency grievance. Again, Boyd received no response.

On November 21, 2002, Boyd prepared two more grievances regarding Helmer's conduct. He sent one of these grievances to Walls and sent the other to the ARB, along with correspondence explaining that the warden had ignored requests for emergency review.

On December 19, 2002, Boyd sent additional correspondence to the ARB.

On December 26, 2002, Boyd sent additional correspondence and an emergency grievance to the ARB.

On December 30, 2002, the Office on Inmate Issues received Boyd's grievance.

On January 3, 2003, the ARB notified Boyd that there was no record that a grievance sent on November 21, 2002 had been received.

On January 22, 2003, Boyd sent correspondence to the ARB.

On February 14, 2003, Boyd sent additional correspondence to the ARB.

On February 18, 2003, the ARB received Boyd's grievance and correspondence. The grievance was returned to Boyd with the explanation that the materials did not include responses from a counselor, a grievance officer or the warden. Boyd was advised to send emergency grievances to the warden.

At some point, a grievance officer obtained Boyd's grievance. The grievance officer forwarded Boyd's grievance to Eugene McAdory, the warden at that time.

On March 25, 2003, McAdory considered Boyd's grievance and decided that an emergency was not substantiated. He sent Boyd a memo explaining that a counselor needed to address the grievance, because it did not satisfy the criteria for emergency review.

On May 31, 2003, Boyd sent correspondence to the ARB.

On August 15, 2003, Boyd sent additional correspondence to the ARB.

On August 19, 2003, the Office of Inmate Issues received Boyd's grievance.

On September 29, 2003, the ARB returned Boyd's grievance and correspondence, explaining that the materials did not include responses from the counselor, the grievance officer or the warden. Boyd was given instructions to follow the grievance procedure by sending the grievance to the counselor, then the grievance officer.

On October 16, 2003, Boyd sought assistance from his counselor, who thought his grievance warranted an investigation by the internal affairs department.

On October 17, 2003, a grievance officer rejected and returned the grievance dated December 26, 2002, explaining that it would not be considered because it was not timely.

On October 19, 2003, a counselor responded to the grievance, recommending a referral to internal affairs for further review.

On October 22, 2003, a grievance officer received Boyd's grievance. Once again, the grievance was rejected and returned without further consideration on the basis that it was untimely.

On February 17, 2003, Boyd sent correspondence to the ARB.

On February 23, 2004, the Office of Inmate Issues received Boyd's grievance.

On March 31, 2004, the ARB returned Boyd's grievance and correspondence, explaining that the grievance was untimely and would not be addressed.

In addition to the efforts outlined above, Boyd sent correspondence to other individuals and officials.

Boyd must exhaust his administrative remedies prior to filing a complaint regarding the conditions of his confinement.  **42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 739 (2001).**  In applying this requirement, the Court requires prisoners to follow administrative rules.  ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).**  However, a remedy may become "unavailable," if prison employees do not respond to a properly filed grievance.  ***Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).**

Here, Boyd sought emergency review of his grievance regarding Helmer's conduct, without success.  Initially, the warden ignored Boyd's grievances, which were properly filed.  However, the lack of a response to Boyd's initial request for emergency consideration did not deprive Boyd of an available remedy.

At all times, Boyd retained the ability to process his grievance in the usual manner - by seeking assistance from a counselor and proceeding through the remaining steps of the process.  The absence of a response from Walls did not deprive Boyd of an available remedy.

Boyd did not exhaust administrative remedies by trying to present his grievance directly to the ARB.  The ARB's letters show that Boyd's grievance was received several times and rejected as incomplete or untimely.

Boyd did, eventually, commence the usual grievance process by seeking assistance from a counselor. However, he waited too long to take this initial step. As a result, his grievance was late when the counselor's suggestion finally reached the grievance officer. Under these circumstances, Boyd's claim must be dismissed without prejudice for failure to exhaust administrative remedies.

Accordingly, the Court **GRANTS** Defendant Helmer's motion (Doc. 16) and **DISMISSES this action *without prejudice,*** based on Boyd's failure to satisfy the exhaustion requirement of § 1997e(a).

**IT IS SO ORDERED.**

**DATED this 3rd day of March, 2006.**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**U.S. District Judge**